NOT FOR PUBLICATION                                          CLOSED

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| _____ : | |
| DAVID WILSON, : | |
| : | |
| Plaintiff, : | Civ. No. 04-3637 (JAP) |
| : | |
| v. : | |
| : | **OPINION** |
| : | |
| DEVON BROWN, et al., : | |
| : | |
| Defendants. : | |
| _____ : | |

PISANO, District Judge.

Presently before the Court is a motion by defendants Devon Brown, Terrance Moore, Edward Kocserha, Kevin Savoy, SCO Silva, SCO Lazarus, Lydell Sherrer, SCO Parks and SCO McDaniel ("Defendants") to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6), or in the alternative, for summary judgment in lieu of an answer pursuant to Fed. R. Civ. P. 56. Also before the Court is Plaintiff David Wilson's ("Plaintiff" or "Wilson") cross motion for summary judgment. For the reasons set forth herein, the Court grants Defendants' motion and denies Plaintiff's cross motion.

## I.      BACKGROUND

### A.      Procedural History

Plaintiff is a New Jersey State Prison inmate who is presently incarcerated at East Jersey State Prison ("EJSP") in Rahway, New Jersey. Plaintiff submitted his complaint to this Court for filing *pro se* on July 30, 2004. In the complaint, Wilson alleged that he was subjected to

conditions of confinement constituting a fire hazard at EJSP on February 24, 2004.  He named

Devon Brown, Terrance Moore, Edward Kocserha, Kevin Savoy, SCO Siluar, and SCO Lazhrus

as defendants.  On December 9, 2004, Wilson filed an application pursuant to Fed. R. Civ. P. 15

to amend the complaint to include allegations that he was subjected to an excessive use of force

at Northern State Prison ("NSP") on November 24, 2004, and to add as named defendants Lydell

Sherrer, SCO Parks, and SCO McDaniel.

On March 7, 2005, the Court granted Wilson's application to amend the complaint and to

proceed *in forma pauperis* and directed the Clerk to file the complaint and amended complaint.

The Court further ordered that all claims against the defendants in their official capacities, but

not in their individual capacities, be dismissed with prejudice.  On April 11, 2005, defendants

Devon Brown, Terrance Moore, Edward Kocserha, Kevin Savoy, SCO Silva, SCO Lazarus,

Lydell Sherrer, SCO Parks and SCO McDaniel filed an answer to Plaintiff's amended complaint.

Defendants filed an amended answer to the amended complaint on September 16, 2005.  Wilson

filed another amended complaint on November 29, 2005, and filed a motion to amend his

complaint on February 27, 2006, which the Court granted on March 28, 2006.  The Court

directed Defendants to file an answer to the amended complaint by April 15, 2006.[1]  On May 10,

2006, Marco A. Laracca, Esq., of Bio and Laracca, P.C., filed a Notice of Appearance on behalf

---

[1] Plaintiff asserts that Defendants did not answer the amended complaint within the time frame as directed by the Court, and that therefore, Defendants' motion pursuant to Fed. R. Civ. P. 12(b)(6) is moot.  The Court disagrees.  Defendants acknowledge that through mistake and inadvertence, a third amended answer was never filed.  However, Defendants have been actively engaged in this litigation in filings and case conferences since that time.  Further, Plaintiff's third amended complaint did not substantially alter the claims set forth in Plaintiff's second amended complaint.  The Court finds that Plaintiff has not suffered any prejudice as a result of Defendants' inadvertence in failing to file an answer to Plaintiff's third amended complaint.  Therefore, the Court will consider the instant motion.

of Wilson.

_____**B.**____**Factual History**

On February 24, 2004, Wilson was housed within EJSP's trailer/minimum custody unit known as "6 Wing."  6 Wing is a dormitory-style housing complex that was constructed in the early 1980s and was comprised of modular trailers connected by common areas.  The North Side encompassed four trailers, identified as the A, B, C, and D wings, and the South Side contained six trailers, identified as the A, B, C, D, E and F wings.  Each trailer accommodated eight beds. The common area connecting the North and South Sides, known as the "Dayroom", was equipped to house approximately thirty beds in its rear area.  The trailers were constructed of plywood covered by aluminum siding.  According to the affidavit of Thomas E. Kemble, submitted in support of Defendants' motion for summary judgment, all of the trailers, as well as the Dayroom and all other common areas, were equipped with smoke detectors, exit signs, and emergency lights.  Each fire door exit door contained a fire alarm and enabled access to a fire escape stairwell to the ground.  There were no sprinklers within 6 Wing.

Wilson was assigned to the 6 Wing for approximately one year prior to February 24, 2004.  At approximately 3:15 a.m. on February 25, 2004, a fire occurred in 6 Wing.  Fire Departments from Avenel, Metuchen, Port Reading, Colonia, Perth Amboy, Rahway, Fords and Iselin responded to the scene with fire equipment and personnel.  Wilson contends that the corrections officers in charge of the unit were asleep at the time of the fire and had to be awakened by prisoners.  The cause of the fire was determined to be an accidental electrical malfunction.  The 6 Wing building was not salvageable and had to be demolished and removed from the prison grounds.

After the fire, on February 25, 2004, Wilson was interviewed by Senior Investigator T. Smith and Senior Investigator J. Raboy.  Wilson stated that he had been sleeping prior to the fire and did not report seeing anything unusual prior to the fire.  Reports indicate that Wilson did not sustain any injuries after the fire and did not require any medical attention.

Wilson was transferred from EJSP to NSP in Newark, New Jersey, on August 18, 2004. On November 24, 2004, he was housed in the Administrative Segregation Close Supervision Unit, One Wing, Cell 121 of NSP.  He was allowed out of his cell to take a shower pursuant to prison protocol.  After leaving the shower, a civilian nurse and Senior Corrections Officer ("SCO") Maurice Parks ("Parks") placed Wilson in handcuffs and ordered him to proceed to his cell.  Wilson complied, and his cell door was secured.  After the nurse cleared the tier, SCO Parks failed to remove Wilson's handcuffs.

Wilson alleges that he requested that Parks remove the handcuffs, and Parks refused to do so.  Wilson fell asleep with the handcuffs on.  The following morning, custody staff noticed that Wilson was still wearing the handcuffs and immediately removed them.  Wilson was then escorted to the infirmary, where he was scheduled for evaluation for temporary housing.  A physical examination did not reveal any bruising, discoloration, swelling of the writs, or deficiency in range of motion.  Therefore, Wilson was medically cleared to leave the infirmary. Parks was found to be negligent in his duties by failing to remove the handcuffs from Wilson, and as a result, he received a ten day suspension from work for neglect of duty.  However, according to Defendants, no evidence was uncovered that the act was done as a form of punishment.

On November 29, 2004, Wilson was transferred to the South Wing, cell 206T, where he

remained until December 29, 2004, when he was returned to EJSP.

## II.    STANDARD OF REVIEW

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).[2]  The substantive law identifies which facts are critical or "material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to present evidence that a genuine, fact issue compels a trial. Id. at 324.  In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).   Thus, the non-moving party cannot rely on bare assertions or conclusory allegations to support his affirmative claims. See, e.g., Morales v. Busbee, 972 F. Supp. 254, 259 (D.N.J. 1997).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " Matsushita, 475 U.S. at 587 (quoting First Nat'l Bank of Arizona v.

---

[2]  The Court treats this motion as a motion for summary judgment pursuant to Fed. R. Civ. P. 56 because it wishes to consider matters outside the pleadings.  See Fed. R. Civ. P. 12(b). See, e.g., Hilfirty v. Shipman, 91 F.3d 573, 578-79 (3d Cir. 1996); see also Scott v. Graphic Comm. Int'l Union, Local 97-B, 92 Fed. Appx. 896, 902-03 (3d Cir. 2004) (finding that district court's treatment of motion to dismiss as motion for summary judgment was proper because motion was brought in the alternative and thus, plaintiff was on adequate notice that motion might be considered on summary judgment standard).

Cities Serv. Co., 391 U.S. 253, 289 (1968)).

III.   **DISCUSSION**

Plaintiff claims that Defendants violated his rights pursuant to 42 U.S.C. § 1983.  To

establish a violation of section 1983, Plaintiff must establish (1) that he was deprived of a right,

privilege, or immunity secured by the Constitution or laws of the United States and 2) that the

alleged deprivation was committed under color of state law.[3]  42 U.S.C. § 1983; Am. Mfrs. Mut.

Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999); D'Aurizio v. Palisades Park, 963 F.Supp. 378,

383 (D.N.J. 1997).[4]  Accordingly, section 1983 itself is not a source of substantive rights, but

provides a vehicle for vindicating the violation of federal rights.  See, e.g., Graham v. Connor,

490 U.S. 386, 393-94 (1989).  To establish personal or individual liability in a section 1983

action, a plaintiff must show "that the official acting under color of state law caused the

deprivation of a federal right."  Kentucky v. Graham, 473 U.S. 159, 166.

According to Plaintiff, Defendants violated Plaintiff's Eighth Amendment right to safe

conditions of confinement as a result of the fire that occurred on February 25, 2004.  Plaintiff also

alleges in his complaint that he inhaled smoke and did not receive medical attention until four

hours after the incident, which the Court construes as a claim that the Defendants deprived

---

[3]  The "under color of state law" element of section 1983 is similar to the state action requirement of the Fourteenth Amendment in that it excludes merely private conduct from the parameters of section 1983.  See, e.g., Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999).  This element in not in dispute.

[4]  Section 1983 states in relevant part: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ."  42 U.S.C. § 1983.

Plaintiff of his Eighth Amendment right to adequate medical care.  Further, Plaintiff alleges that

on the evening of November 24, 2004, Defendants caused the deprivation of Plaintiff's Eighth

Amendment rights by subjecting him to excessive force by failing to remove handcuffs from his

person.  The Court will examine each claim in turn.

**A.      Conditions of Confinement and Inadequate Medical Care Claims**

The Eighth Amendment's provision against cruel and unusual punishment governs the

issue of humane living conditions.  <u>Rhodes v. Chapman</u>, 452 U.S. 337, 345-46 (1981).  To

succeed on his claim that he was denied his right to safe conditions of confinement, Plaintiff must

demonstrate that prison officials knew of substandard conditions within the prison and "acted or

failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety."

<u>Ingalls v. Florio</u>, 968 F.Supp. 193, 198 (D.N.J. 1997).  Plaintiff must allege an objective

component, a sufficiently serious deprivation, and a subjective component, a "sufficiently

culpable state of mind."  <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991).

Plaintiff alleges that he has been housed under conditions subjecting him to an

unreasonable risk of death or injury due to fire.  He maintains that Defendants acted with reckless

disregard for his safety by creating and maintaining a fire hazard at EJSP.  Plaintiff has failed,

however, to offer any factual support for his allegations.  Rather, the evidence only shows that

Plaintiff's living quarters were not equipped with sprinklers.  The trailer unit was, however,

equipped with smoke detectors, emergency lighting and exit signs.

Further, Plaintiff asserts that Defendants Silva and Lassiter were both asleep when the fire

began, and were both unprepared and untrained to confront a prison fire.  Again, Plaintiff has not

offered any factual support for his allegations.  Even if Defendants Silva and Lassiter were asleep

when the fire began, this would not amount to a "deliberate indifference to a substantial risk of harm to inmate health or safety."  At most, it appears that Defendants' actions might support a claim of mere negligence, which is insufficient to establish a violation under § 1983.  See Davidson v. O'Lone, 752 F.2d 817, 826 (3d Cir. 1984).  Therefore, the Court finds that Defendants have met their burden of showing that no genuine issue of material fact exists that would warrant a trial on Plaintiff's claim that he was denied his right safe conditions of confinement.

The Court also dismisses Plaintiff's claim that he was deprived of his Eighth Amendment right to adequate medical care following the fire.  In the medical context, a plaintiff must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs, and this indifference must constitute "an unnecessary and wanton infliction of pain" and offend "evolving standards of decency" in order to violate the Eighth Amendment.  Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).  Applying this standard, the Court finds that Plaintiff's claim that he did not receive adequate medical care following the fire is not cognizable under § 1983.  First, the record reflects that all inmates housed within 6 Wing, including Wilson, received medical treatment on the night of the fire.  Second, Wilson did not report any injury on the night of the fire.  Nor did he file any administrative remedy form complaining of the need for additional fire related medical treatment after the fire.  There is simply no evidence to support Plaintiff's claim that he was deprived of his Eighth Amendment right to adequate medical care following the fire.  Accordingly, the Court grants summary judgment to Defendants dismissing Plaintiff's claim.

**B.     Excessive Force Claim**

The Court also grants Defendant's motion for summary judgment regarding Plaintiff's

excessive force claim.  Summary judgment on an excessive force claim is appropriate where "the evidence, viewed in the light most favorable to the plaintiff, does not support a "reliable inference of wantonness in the infliction of pain."  Whitley v. Albers, 475 U.S. 312, 322 (1986); Thomas v. Ferguson, 361 F. Supp. 2d 435, 438 (D.N.J. 2004).  The analysis turns on whether the force was applied "in a good faith effort to maintain or restore discipline or maliciously and sadistically to cause harm."  Whitley, 475 U.S. at 320.  Factors a court may consider in evaluating an excessive force claim are:  (1) the need for application of the force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the threat to the safety of staff and inmates reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response.  See Whitley, 475 U.S. at 321; Thomas, 361 F. Supp. 2d at 438.

Defendants have shown that Parks did not use excessive force against Plaintiffs on the evening of November 24, 2004.  It is undisputed that Parks failed to remove the handcuffs from Plaintiff after placing him in his cell.  However, the evidence before the Court shows that Plaintiff slept through the night and that no excessive force was used against him.  In the morning, when custody staff realized that Wilson was still in handcuffs, they immediately removed the handcuffs and brought Wilson to the infirmary.  Further, despite Plaintiff allegations that he suffered injuries to his hands and wrists, a physical examination revealed no bruising, discoloration, or swelling, and no deficiency in range of motion was detected.  Nothing in the record indicates that Plaintiff sustained anything more than de minimus injury, nor that excessive force was used against him.  Accordingly, the Court grants Defendants' motion for summary judgment dismissing Plaintiff's excessive force claim.

**IV.    CONCLUSION**

For the reasons stated above, Defendants' motion for summary judgment is granted and Plaintiff's complaint is dismissed.  Plaintiff's cross motion for summary judgment is denied.  An appropriate order accompanies this opinion.


/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

Dated: April 3, 2007

10